UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

CAROL KURIMOTO LORIAUX,

     Plaintiff,

v.

CARNIVAL CORPORATION,

     Defendant.

_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiff, CAROL KURIMOTO LORIAUX, by and through her undersigned attorneys and hereby sues Defendants, CARNIVAL CORPORATION, d/b/a CARNIVAL CRUISE LINES ("CARNIVAL"), and alleges:

## **JURISDICTION, VENUE, AND PARTIES**

1.    Plaintiff, CAROL KURIMOTO LORIAUX, is a resident and citizen of the State of California.

2.    CARNIVAL is a Panamanian corporation with its principal place of business in Miami-Dade County, Florida.

3.    CARNIVAL accordingly is a citizen both of Panama and of Florida for jurisdictional purposes.

4.    This Court has jurisdiction based on diversity of citizenship 28 USC §1332 because this is an action for damages that exceeds this Court's minimum jurisdictional requirements, to wit, $75,000.00, exclusive of all interest and costs; and the parties are completely diverse as the Plaintiff is from Georgia and the Defendant is from California.

5.      This Court has jurisdiction over this matter pursuant to 28 USC §1333(1) (admiralty) and the contractual language contained in the cruise ticket.

6.      At all material times, Defendant CARNIVAL has conducted ongoing substantial and not isolated business activities in Miami-Dade County, Florida, in the Southern District of Florida, so that in personam jurisdiction over the Defendant exists in the United States District Court for the Southern District of Florida.

7.      At all material times, CARNIVAL has engaged in the business of operating maritime cruise vessels for paying passengers, including the Plaintiff.

8.      In the operative ticket contract, CARNIVAL requires fare paying passengers such as the Plaintiff, to bring any lawsuit against CARNIVAL arising out of injuries or events occurring on the cruise voyage in this federal judicial district. Accordingly, venue is proper in this Court.

9.      Venue is also proper in this district because CARNIVAL's principal places of business are located within this district.

10.     Plaintiff has complied with all conditions precedent to bringing this action.

## GENERAL ALLEGATIONS

11.     At all material times, CARNIVAL was engaged in the business of operating maritime cruise vessels for fare paying passengers and for this purpose operated, among other vessels, the *Carnival Panorama*.

12.     At all material times, including the injury date of October 31, 2024[1], Plaintiff was a fare paying passenger aboard the *Carnival Panorama* (herein the "subject vessel") and in that capacity was lawfully present aboard the vessel.

---

[1] By agreement, the Statute of Limitations was extended until January 29, 2026.

13. On October 31, 2024, at the time of the incident, Plaintiff was descending the stairs, located at the midship stairwell, between Deck Five (5) to Deck Four (4) (herein the "subject stairs").

14. Suddenly, and without warning, Plaintiff tripped and fell due to the defective condition of the subject stairs including a raised and/or bent nosing on the subject stairs.

15. As a result of this trip and fall incident, Carol Kurimoto Loriaux suffered a catastrophic injury, including, but not limited to, a left femoral shaft fracture.

16. The raised and/or bent nosing portion of the subject staircase created a hazardous and dangerous condition. Prior to the incident, the dangerous conditions was not apparent to Plaintiff.

17. CARNIVAL knows that staircases are subjected to significant wear and tear due to the high volume of passengers using the areas from cruise to cruise.

18. Because CARNIVAL knows this, CARNIVAL also knows that it must regularly inspect each staircase to ensure that all stairs are in a safe condition and is fit for use by its passengers.

19. CARNIVAL also knows that its employees must provide adequate maintenance to staircases and promptly replace or repair stairs that are unsafe or unfit for passenger use to prevent passengers from becoming injured.

20. Accordingly, a defective or damaged stair and/or staircases injury incident on one Carnival Cruise Ship is substantially no different from a defective or damaged stair injury incident on any other cruise ship(s).

21. The defective condition of the subject staircase would not in the ordinary course of events have occurred without negligence Defendant, Carnival in its inspection and maintenance.

22.     The negligent and deferred maintenance and defect in the staircase and/or stair caused the exposed raised portion of the subject staircase to become a hazard while Plaintiff was using the stairs and causing her to suffer severe, debilitating, and permanent injuries.

23.     Carnival is on notice of numerous prior substantially similar incidents involving passengers suffering injuries due to broken and/or defective stairs and/or staircases including, but not limited to:

a.     On July 29, 2019, onboard the *Carnival Horizon* plaintiff suffered serious injuries caused by a staircase while Plaintiff was descending the stairs from Deck 4 to Deck 2. See *Chappell v. Carnival Corporation,* Case No.: 2021-cv-23787;

b.     On July 9, 2019, onboard the *Carnival Elation* plaintiff suffered serious injuries caused by a staircase while Plaintiff was descending the stairs from Deck 14 to Deck 12. See *Best v. Carnival Corporation*; Case No.: 21-cv-23697-BB;

c.     On February 21, 2019, onboard the *Carnival Sunrise* plaintiff suffered serious injuries caused by a staircase while Plaintiff was descending the stairs from Deck 9 to Deck 8. See *Legarth v. Carnival Corporation*; Case No.: 20-cv-25222-CMA;

d.     On November 24, 2018, onboard the *Carnival Freedom* plaintiff suffered serious injuries caused by a staircase while Plaintiff was descending an interior staircase between Decks 4 and 3. See *Johnson v. Carnival Corporation*; Case No.: 2019-cv-23167;

e.     In *Johnson v. Carnival Corporation,* Case No.: 2019-cv-23167, DE 112, Judge Bloom cites to seven (7) prior incidents, in the three years prior to the fall in *Johnson*, aboard the *Carnival Freedom* including:

      i.   On April 26, 2016, a passenger reported a trip and fall while descending the stairs from Deck 6 to Deck 5;

     ii.   On June 13, 2016, a passenger reported he tripped and fell on a staircase while descending from Deck 4 to Deck 3;

   iii.   On January 16, 2018, a passenger reported that she tripped and fell on a staircase while Plaintiff descending from Deck 9 to Deck 8;

   iv.   On August 20, 2018, a minor passenger reported that she tripped and fell on a staircase while was descending the stairs between Deck 11 and Deck 10;

f.   In *Johnson v. Carnival Corporation,* Case No.: 2019-cv-23167, DE 112, Judge Bloom cites to nine (9) other reported incidents involving similar staircases on the *Carnival Conquest* Class *Ships* in the three (3) years before plaintiff's fall in *Johnson*:

g.   On August 29, 2013, onboard the *Carnival Paradise* a passenger tripped and fell on an interior deck stairway. See *Holderbaum v. Carnival Corporation*, Case No. 1:13-cv-24216;

h.   On June 1, 2013, onboard *Carnival Breeze* a passenger tripped and fell on an interior deck stairway. See *Bolender v. Carnival Corporation*, Case No. 1:13-cv-24215;

i.   On August 31, 2013, onboard *Carnival Breeze* a passenger tripped and fell on an interior deck stairway. See *Williams v. Carnival Corporation*, Case No. 1:13-24686;

j.   On February 28, 2016, onboard the *Carnival Victory* a passenger tripped and fell on an interior deck stairway. See *Johnson v. Carnival*, Case No. 1:16-cv-23157; and

k.   On April 4, 2017, onboard the *Carnival Dream* a passenger slipped/tripped and fell on a stairway. See *Gaines v. Carnival*, Case No. 1:17-cv-24179.

24.    Carnival has a refurbishing team that is a full-time part of every crew. The refurbishing team constantly checks the ship for anything that needs repair including steps, chairs, carpet, etc. See *Holderbaum v. Carnival Corporation*, Case No.: 2013-cv-24216, (DE 80-1, December 11, 2014, Deposition of Corporate Representative Monica Petisco, pp. 84:21-85:9.)

25.    Actual notice exists where a defendant recognizes the need to take corrective action. See *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1288-89 (11th Cir. 2015). The refurbishing team is the type of corrective action evincing actual knowledge of danger posed by aging, weak, or otherwise dangerous stairs and/or staircases.

26.    Regardless of the refurbishing team, it has always been Carnival's policy that every crew member's job involves looking out for things that need to be addressed. See *Holderbaum v. Carnival Corporation*, Case No.: 2013-cv-24216 (Deposition of Corporate Representative Monica Petisco, p. 86:6-19.) The immediate cause of an incident would be lack of supervision by crew assigned to the area. *Id.* at p. 105.

**Subsequent Medical Negligence and Failure to Timely Disembark**

27.    After the subject incident, on, or about, October 31, 2024, Plaintiff was transported to the ship's infirmary. Given the severity of Plaintiff's injuries, CARNIVAL provided insufficient medical, which falls below the appropriate standard of care.

28.    While remaining, inappropriately within the ship's medical center, without disembarkation, a Hare Traction device was improperly applied to Plaintiff's femur. This medical device was positioned too high, contrary to established protocols, causing extreme pain.

29.     Additionally, straps were applied during Plaintiff's prolonged visit to the Ship's Infirmary. These straps were so tight that Plaintiff developed a bed soar and/or blister on her heel resulting in ankle irritation.

30.     Furthermore, while in the ship's infirmary, a series of embarrassing and harmful procedures were performed that could have been avoided with a timely and appropriate medical disembarkation.

31.     Despite the obvious severity of her injuries, CARNIVAL delayed Plaintiff's evacuation for approximately five (5) days.

32.     CARNIVAL knew or should have known that Plaintiff required immediate shoreside transfer.

33.     CARNIVAL failed to provide this necessary medical disembarkation, which caused prolonged pain and suffering. Additionally, CARNIVAL's delay increased Plaintiff's risk of complications.

34.     CARNIVAL owes passengers, such as Carol Kurimoto Loriaux, a duty of reasonable care under the circumstances. This duty extends not only to the maintenance of safe premises, but also to the provision of competent medical treatment and timely evacuation when a passenger sustains a traumatic injury.

35.     Defendant CARNIVAL is aware of risks to its cruising passengers suffering injuires while at sea and/or in various foreign ports of call and the necessity of appropriate shipboard diagnostics, medical care and medications and/or immediate efforts to facilitate the transfer or referral of the passenger in a timely manner to more comprehensive shoreside medical care by whatever means, due to previous substantially similar incidents, including:

a. *Timnessia Benton, as Daughter and Next Friend, of Lisa Cassandra Benton v. Carnival Corporation*, Case No. 1:20-cv-23644 (June 7, 2019 incident involving a cruise passenger);

b. *Herbert Maze v. Carnival Corporation*, Case No. 1:16-cv-21012 (July 1, 2015 incident involving a cruise passenger);

c. *Dana Terry v. Carnival Corporation*, Case No. 1:17-cv-21036 (December 25, 2015 incident involving a cruise passenger);

d. *Howard Geiger v. Carnival Corporation*, Case No. 1:16-cv-24753 (February 27, 2016 incident involving a cruise passenger);

e. *Aleah Jordan v. Carnival Corporation*, Case No. 1:17-cv-23460 (September 28, 2016 incident involving a cruise passenger);

f. *Carolyn Baker v. Carnival Corporation*, Case No. 1:17-cv-24427 (December 6, 2016 incident involving a cruise passenger); and

g. *Susan Fallon Perryman v. Carnival Corporation*, Case No. 1:17-cv-24641 (July 1, 2017 incident involving a cruise passenger).

## COUNT I
## NEGLIGENT FAILURE TO WARN OF THE SUJBECT STAIRS AGAINST DEFENDANT

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty-five (35) as though originally stated herein.

36.    On or about October 31, 2024, while aboard the *Carnival Panorama*, Plaintiff was descending the stairs on the subject staircase when she tripped and fell down the staircase due to a raised, bent, and/or defective stair nosing causing severe injuries.

37. This dangerous condition was known to the Defendant or had existed for a sufficient length of time, such that the Defendant should have known, or discovered its existence through the exercise of reasonable care.

38. This dangerous condition was also known to the Defendant because it trains its crew of the need for regular and proper inspection of its staircases, such as the subject staircase, including the need to identify, recognize and remedy these known and observable dangerous conditions.

39. At all times material hereto Defendant, CARNIVAL, owed a duty to Plaintiff and other similarly situated passengers to exercise reasonable care under the circumstances.

40. At all times material hereto, it was the duty of Defendant to warn passengers, such as Plaintiff, of dangers that were known, or reasonably should have been known, to Defendant in places where passengers, such as Plaintiff, are invited to or may reasonably be expected to visit- especially staircases.

41. Defendant and/or its agents, servants and/or employees breached its duty to warn the Plaintiff through the following acts and/or omissions:

    a. Failure to warn the Plaintiff that the subject staircase and/or stair was unreasonably dangerous;

    b. Failure to warn the Plaintiff of the risks and/or dangers associated with the broken, defective, and/or dangerous condition of the nosing on the subject staircase and/or stair;

    c. Failure to warn passengers and the Plaintiff of other staircase(s) and/or stair(s), with bent and/or broken nosing portions of the staircases previously occurring onboard its vessels.

42.     The above acts and/or omissions caused and/or contributed to the Plaintiff being severely injured because Plaintiff would not have utilized the broken and/or defective subject staircase and/or stairs, including bent, broken, and/or defective stairs, had Defendant and/or its agents, servants and/or employees adequately warned and/or communicated the foregoing to the Plaintiff.

43.     At all times material hereto, the subject staircase and/or stair had bent, broken, defective nosing and/or was unreasonably dangerous.

44.     Notwithstanding CARNIVAL's actual or constructive knowledge of the dangerous condition in the subject area where Plaintiff fell, CARNIVAL failed, before the time of the Plaintiff's injury, to take reasonable measures to maintain the subject area in a reasonably safe condition by correcting its dangerous condition. CARNIVAL thereby failed to exercise reasonable care for the safety of its passengers including the Plaintiff and was thereby negligent.

45.     At all material times the dangerous condition of the subject area referenced above was neither known, open nor obvious to the Plaintiff.

46.     At all times material hereto, Defendant knew of the foregoing dangerous conditions causing the Plaintiff's incident and failed to correct and/or warn the Plaintiff about them, or the foregoing dangerous conditions existed for a sufficient length of time so that Defendant, in the exercise of diligence and reasonable care under the circumstances, should have learned of them and corrected and/or warned the Plaintiff about them. Insofar as it relates to conditions that Defendant did not create, Defendant's knowledge was or should have been acquired through prior incident(s) and/or through its maintenance and/or inspections of the subject area.

47.     As a direct and proximate result of Defendant's negligence, Plaintiff suffered bodily injuries resulting in pain and suffering; physical and mental pain and anguish; disability; loss of capacity for the enjoyment of life; expense of hospitalization, surgery, and medications; loss of earnings in the past, loss and/or impairment of the ability to earn money; expenses for physical and occupational therapy, and medical expenses. Said losses are either permanent or continuing in nature and Plaintiff will suffer these losses into the future.

**WHEREFORE**, Plaintiff, CAROL KURIMOTO LORIAUX, demands judgment, interest and costs against Defendant, CARNIVAL, a trial by jury and any such other relief to which the Plaintiff may be justly entitled.

<u>**COUNT II**</u>
<u>**NEGLIGENT FAILURE TO MAINTAIN THE SUBJECT STAIRS AGAINST**</u>
<u>**DEFENDANT**</u>

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty-five (35) as though originally stated herein.

48.     On or about October 31, 2024, while aboard the *Carnival Panorama*, Plaintiff was descending the stairs on the subject staircase when she tripped and fell down the staircase due to a raised, bent, and/or defective stair nosing causing severe injuries.

49.     This dangerous condition was known to the Defendant or had existed for a sufficient length of time, such that the Defendant should have known, or discovered its existence through due diligence and the exercise of reasonable care.

50.     At all times material hereto Defendant, CARNIVAL, owed a duty to Plaintiff and other similarly situated passengers to exercise reasonable care under the circumstances.

51.    Defendant and/or its agents, servants and/or employees breached its duty to maintain through the following acts and/or omissions:

a.  Failure to maintain the subject area in a reasonably safe condition;

b.  Failure to adequately and regularly inspect the subject staircase and/or stair, including, including bent, broken stairs, and/or defective nosing within the ship's interior stairwells, to determine whether it was broken, defective and/or unreasonably dangerous;

c.  Failure to inspect the subject staircase and/or stair, including bent, broken stairs, and/or defective nosing, within the ship's interior stairwells and to maintain it in a reasonably safe condition in light of the known, foreseeable and anticipated use of this heavily trafficked area;

d.  Failure to timely correct those hazardous conditions when they were or should have been detected;

e.  Failure to adequately and regularly inspect the subject area to determine whether it was unreasonably dangerous;

f.  Failure to regularly and adequately inspect and maintain the subject area including the subject staircase and/or stairs that contained bent, broken stairs, and/or defective nosing; and/or

g.  Failure to maintain the inspect the subject staircase and/or stairs, including bent, broken stairs, and/or defective nosing within the ship's interior stairwells especially in the heavily trafficked areas in a reasonably safe condition if/when the subject staircase and/or stair became broken and/or unsafe, including, but not limited to, repairing the defective

condition, replacing the nosing,  closing off the area that contained the dangerous stair(s), and/or placing signage to caution passengers of the hazardous condition.

52.    The above acts and/or omissions caused and/or contributed to the Plaintiff being severely injured because Plaintiff's incident would not have occurred but for Defendant's failure to adequately inspect and/or maintain the subject staircase and/or stairs, including the bent, broken stairs, and/or defective nosing within the ship's interior stairwells.

53.    At all times material hereto, the subject staircase and/or stair, including exposed metal, broken stairs, and/or defective lighting within the ship's interior stairwells was broken, defective and/or unreasonably dangerous.

54.    Notwithstanding CARNIVAL's actual or constructive knowledge of the dangerous condition of the subject area where Plaintiff fell, CARNIVAL failed, before the time of the Plaintiff's injury, to take reasonable measures to maintain the the subject area in a reasonably safe condition by correcting its dangerous condition. CARNIVAL thereby failed to exercise reasonable care for the safety of its passengers including the Plaintiff and was thereby negligent.

55.    At all material times the dangerous condition of the subject area referenced above was neither known, open nor obvious to the Plaintiff.

56.    At all times material hereto, Defendant knew of the foregoing dangerous conditions causing Plaintiff's incident and did not correct them, or the conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them. This knowledge was or should have been acquired through Defendant's maintenance and/or regular inspections of the subject staircase and/or stair, including, including bent, broken stairs, and/or defective

nosing within the ship's interior stairwells especially in the heavily trafficked areas and/or through prior incidents involving passengers injured due to broken, defective and/or unreasonably dangerous stairs on Defendant's vessels and/or other vessels reported within the cruise industry.

57.     As a direct and proximate result of Defendant's negligence, Plaintiff, CAROL KURIMOTO LORIAUX, suffered bodily injuries resulting in pain and suffering; physical and mental pain and anguish; disability; loss of capacity for the enjoyment of life; expense of hospitalization, surgery, and medications; loss of earnings in the past, loss and/or impairment of the ability to earn money; expenses for physical and occupational therapy, and medical expenses. Said losses are either permanent or continuing in nature and Plaintiff will suffer these losses into the future.

58.     WHEREFORE, Plaintiff, CAROL KURIMOTO LORIAUX, demands judgment, interest and costs against Defendant, CARNIVAL CORPORATION, a trial by jury and any such other relief to which the Plaintiff may be justly entitled.

**COUNT III**
**GENERAL NEGLIGENCE AGAINST DEFENDANT**

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty-five (35) as though originally stated herein.

59.     On or about October 31, 2024, while aboard the *Carnival Panorama*, Plaintiff was descending the stairs on the subject staircase when she tripped and fell down the staircase due to a raised, bent, and/or defective stair nosing causing severe injuries.

60.   This dangerous condition was known to the Defendant or had existed for a sufficient length of time, such that the Defendant should have known, or discovered its existence through diligence and the exercise of reasonable care.

61.   At all times material hereto Defendant, CARNIVAL, owed a duty to Plaintiff and other similarly situated passengers to exercise reasonable care under the circumstances.

62.   Defendant and/or its agents, servants and/or employees breached its duty to provide Plaintiff with reasonable care under the circumstances through the following acts and/or omissions:

   a.   Failure to fix, replace, and/or remove the bent, broken stairs, and/or defective nosing from the subject staircase and/or stair;

   b.   Failure to close off the areas that contained the subject staircase and/or stair;

   c.   Failure to instruct passengers and the Plaintiff concerning the subject staircase and/or stair including the existence of the bent, broken stairs, and/or defective nosing;

   d.   Failure to correct the hazardous conditions following other accidents involving broken and/or defective staircases and/or stair nosing on vessels within its fleet;

   e.   Failure to promulgate and/or enforce adequate procedures to keep the subject staircase and/or stairs in a reasonably safe condition; and/or

   f.   Failure to adequately test the subject staircase and/or stairs before permitting passengers and the Plaintiff to use it.

63.   The above acts and/or omissions caused and/or contributed to the Plaintiff being severely injured because Plaintiff's incident would not have occurred but for such acts and/or omissions.

64.     Notwithstanding CARNIVAL's actual or constructive knowledge of the dangerous condition of the subject area where Plaintiff fell, CARNIVAL failed, before the time of the Plaintiff's injury, to take reasonable measures to maintain the subject area in a reasonably safe condition by correcting its dangerous condition. CARNIVAL thereby failed to exercise reasonable care for the safety of its passengers including the Plaintiff and was thereby negligent.

65.     At all material times the dangerous condition of the subject area referenced above was neither known, open nor obvious to the Plaintiff.

66.     At all times material hereto, Defendant knew of the foregoing conditions causing Plaintiff's incident and did not correct them, or the conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them. This knowledge was or should have been acquired through Defendant's maintenance and/or regular inspections of the subject staircase and/or stairs including the bent, broken, and/or defective nosing on the subject stairs, through prior incidents involving passengers injured due to broken and/or defective staircase accidents on Defendant's vessels and/or other vessels reported within the cruise industry.

67.     As a direct and proximate result of Defendant's negligence, Plaintiff, CAROL KURIMOTO LORIAUX, suffered bodily injuries resulting in pain and suffering; physical and mental pain and anguish; disability; loss of capacity for the enjoyment of life; expense of hospitalization, surgery, and medications; loss of earnings in the past, loss and/or impairment of the ability to earn money; expenses for physical and occupational therapy, and medical expenses. Said losses are either permanent or continuing in nature and Plaintiff will suffer these losses into the future.

WHEREFORE, Plaintiff, CAROL KURIMOTO LORIAUX, demands judgment, interest and costs against Defendant, CARNIVAL, a trial by jury and any such other relief to which the Plaintiff may be justly entitled.

<u>**COUNT IV**</u>
<u>**Vicarious Liability for Negligence of Medical Staff**</u>
<u>**(Actual Agency / Respondeat Superior)**</u>

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty-five (35) as though originally stated herein.

68.    On or about October 31, 2024, while aboard the *Carnival Panorama*, Plaintiff was descending the stairs on the subject staircase when she tripped and fell down the staircase due to a raised, bent, and/or defective stair nosing causing severe injuries. Thereafter, Plaintiff was treated in the ship's infirmary and/or medical center.

69.    At all times material, CARNIVAL owed Plaintiff the duty to exercise reasonable care under the circumstances. Plaintiff presented to the Ship's medical center and staff while suffering from a femur fracture1, and Defendant owed Plaintiff the duty of protecting her from injury relating to her emergent condition and to exercise reasonable care to furnish such aid and assistance as ordinarily prudent medical staff would render under similar circumstances.

70.    CARNIVAL, by and through its employees and/or actual agents, including the Ship's nurse(s) and physician(s), breached its duty of care owed to Plaintiff in one or more of the following ways:

a.    Defendant failed to properly assess the gravity of Plaintiff's medical condition;

b.    Defendant, through its ship's doctor, failed to timely diagnose Plaintiff;

c.    Defendant failed to treat Plaintiff in a timely and appropriate manner while she was on the Vessel;

d.  Defendant failed to undertake or adequately undertake a timely and comprehensive medical examination of Plaintiff;

e.  Defendant failed to utilize or adequately utilize available diagnostic equipment and/or techniques to appropriately assess Plaintiff's condition;

f.  Defendant failed to properly monitor Plaintiff;

g.  Defendant failed to obtain appropriate consultation in a timely manner with land-based specialists available on a 24/7 basis to provide timely and appropriate medical care and treatment of Plaintiff;

h.  Defendant failed to utilize telemedicine and other resources on the Vessel to properly assess Plaintiff's condition;

i.  Defendant failed to obtain timely and appropriate consultation with the Ship's Captain to determine whether early disembarkation possible and medically necessary;

j.  Defendant failed to obtain timely and appropriate consultation with land-based specialists available on a 24/7 basis on issues including immediate deviation and/or evacuation of Plaintiff from the Vessel; and/or

k.  Defendant deviated from the standard of care for treating patients in Plaintiff's condition.

71.  Defendant knew or reasonably should have known about these conditions and failures but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to Defendant as evidenced by pre-existing policies and procedures to transfer or refer passengers in need of more comprehensive medical care to shoreside medical facilities. Defendant was aware that passengers may suffer from life-

threatening conditions and was aware of the urgent need to deviate, transfer, or evacuate such patients to competent medical facilities capable of providing treatment.

72.   That at all times material, the shipboard personnel who evaluated and subsequently treated Plaintiff and/or controlled the decision to deviate and/or evacuate Plaintiff were employees and/or actual agents of the Defendant acting within the scope and course of their employment or acting for and on behalf of CARNIVAL.

73.   That the employment relationship and/or actual agency existed as a result of written agreements and/or course and conduct, which provided that CARNIVAL had control or the right of control over the duties and practice of the aforementioned shipboard personnel.

74.   That the control or right of control that created the employment relationship and/or actual agency included, but was not necessarily limited to, the following:

   a.   That Defendant had the right to hire and fire the shipboard physician, its nurses, and/or the Master;

   b.   That Defendant directly employed and paid a salary to the shipboard physician, its nurse, and/or the Master;

   c.   That Defendant had the power to determine the working hours of the ship's physician, its nurse, and the Master;

   d.   That Defendant had the right to transfer its physician, other medical personnel, and the vessel's Master to and from any of its vessels at its discretion;

   e.   That while under contract to and/or control of Defendant, the physician and nurse were not permitted to practice medicine either on their own or for any other entity;

f.   That the physician and nurse conducted their practice onboard the vessel and within the medical center, which was provided by Defendant, including all equipment and medicines;

g.   That the medical center was created, owned, and operated by Defendant;

h.   That Defendant represented and held out to immigration authorities and passengers that the medical personnel were members of the ship's crew; and/or

i.   That Defendant selected and provided all of the medicines, equipment, supplies, and other tools utilized by the shipboard physician and nurse to treat passengers.

75.   That Plaintiff was directly charged for medical services as determined by CARNIVAL.

76.   That none of the charges to Plaintiff were received by the ship's doctors and/or nurses, who instead were paid a salary by CARNIVAL as its employee.

77.   As a direct and proximate result of CARNIVAL's negligence as described above, including Defendant's Ship Doctor's negligence for which CARNIVAL is liable, Plaintiff, CAROL KURIMOTO LORIAUX, suffered bodily injuries resulting in pain and suffering; physical and mental pain and anguish; disability; loss of capacity for the enjoyment of life; expense of hospitalization, surgery, and medications; loss of earnings in the past, loss and/or impairment of the ability to earn money; expenses for physical and occupational therapy, and medical expenses. Said losses are either permanent or continuing in nature and Plaintiff will suffer these losses into the future.

WHEREFORE, Plaintiff, CAROL KURIMOTO LORIAUX, demands judgment, interest and costs against Defendant, CARNIVAL, a trial by jury and any such other relief to which the Plaintiff may be justly entitled.

## COUNT V
## Vicarious Liability for Negligence of Medical Staff
## (Apparent Agency / Respondeat Superior)

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty-five (35) as though originally stated herein.

78. On or about October 31, 2024, while aboard the *Carnival Panorama*, Plaintiff was descending the stairs on the subject staircase when she tripped and fell down the staircase due to a raised, bent, and/or defective stair nosing causing severe injuries. Thereafter, Plaintiff was treated in the ship's infirmary and/or medical center.

79. That at all times material, CARNIVAL, by and through its employees, shipboard contractors, and/or apparent agents, owed Plaintiff the duty to exercise reasonable care under the circumstances. In particular, Plaintiff presented to the Ship's medical center and staff while suffering from a fractured femur, and Defendant owed Plaintiff the duty of protecting her from injury relating to her emergent condition and to exercise reasonable care to furnish such aid and assistance as ordinarily prudent medical staff would render under similar circumstances.

80. That Defendant, by and through its shipboard employees, contractors, and/or apparent agents, including the Ship's nurse(s) and physician(s), breached the duty of care owed to Plaintiff and were negligent in one or more of the following ways:

 a. Defendant failed to properly assess the gravity of Plaintiff's medical condition;

 b. Defendant, through its ship's doctor, failed to timely diagnose Plaintiff;

 c. Defendant failed to treat Plaintiff in a timely and appropriate manner while she was on the Vessel;

d. Defendant failed to explain or adequately explain available treatment options to Plaintiff so that she could make an informed decision as to her treatment and likely outcome from the fracture;

e. e. Defendant failed to undertake or adequately undertake a timely and comprehensive medical examination of Plaintiff;

f. Defendant failed to utilize or adequately utilize available diagnostic equipment and/or techniques to appropriately assess Plaintiff's condition;

g. Defendant failed to properly monitor Plaintiff;

h. Defendant failed to obtain appropriate consultation in a timely manner with land-based specialists available on a 24/7 basis to provide timely and appropriate medical care and treatment of Plaintiff;

i. Defendant failed to utilize telemedicine and other resources on the Vessel to properly assess Plaintiff's condition;

j. Defendant failed to obtain timely and appropriate consultation with land-based specialists available on a 24/7 basis on issues including immediate deviation and/or evacuation of Plaintiff from the Vessel; and/or

k. Defendant deviated from the standard of care for treating patients in Plaintiff's condition;

81. Defendant knew or reasonably should have known about these conditions and failures but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to Defendant as evidenced by pre-existing policies and procedures to transfer or refer passengers in need of more comprehensive medical care to shoreside medical facilities. Defendant was aware that passengers may suffer from life-

threatening conditions and was aware of the urgent need to deviate, transfer, or evacuate such patients to competent medical facilities capable of providing treatment.

82. That at all times material, the Defendant, CARNIVAL, held out its medical staff, including its doctors and nurses, as well as the Master, as being its employees and/or apparent agents who work in the Defendant's medical centers on the Vessel or navigated the Vessel. That Defendant promotes its medical staff and represents them as being its employees and/or apparent agents through brochures, internet advertising, and onboard the Vessel. That CARNIVAL held out its staff, including the Ship's physician and medical personnel, as being direct employees or apparent agents.

83. That the Defendant promotes the idea that the medical staff who work in its medical centers are under the control of and acting for and on behalf of CARNIVAL as part of a marketing tool to induce passengers such as Plaintiff to buy cruises on its ships, particularly because the cruise line goes to various foreign ports which may not have adequate medical care.

84. At all times material, the Defendant, CARNIVAL, held out the people working at the ship's medical center, including its medical personnel, as its apparent agents. The Defendant, CARNIVAL, promotes the people working at the ship's medical center, and represents them as being their apparent agents through brochures, internet advertising, and communications to passengers on the vessel. CARNIVAL held out the people working at the ship's medical center, including its medical personnel, as being its direct employees or its actual agents.27.The Defendant, CARNIVAL, promotes the idea that the people working at the ship's medical center, including its medical personnel, are its apparent agents as part of a marketing tool to induce passengers such as Plaintiff to cruise on its ships. That CARNIVAL manifested to Plaintiff in this case that its medical staff, including

its shipboard doctors and nurses, were acting as its employees and/or apparent agents in various ways, and/or were subject to the right of control by Defendant, including but not limited to:

a. The doctor and nurse both worked at what Defendant describes in its advertising as "our medical center";

b. The medical centers were created, owned, and operated by CARINVAL, which paid to stock the medical centers with all supplies, medicines, and equipment;

c. The passenger was billed directly by CARNIVL, whereas the medical staff, including the doctor and nurse, were paid salaries by CARNIVAL to work in the medical centers;

d. The medical staff, including the shipboard physicians and nurses, were given uniforms with name tags bearing the CARNIVAL name and logo, which were required by CARNIVAL to be worn;

e. The doctor was considered an officer onboard the Vessel and a member of the crew and was introduced to passengers as one of the Ship's officers;

f. The Ship's doctor and nurse were held out to passengers by as members of the Ship's crew;

g. Defendant placed the Ship's physician and nurse under the command of the Ship's superior officers, including the Master of the Ship, as well as Defendant's shoreside Medical Department;

h. Defendant placed the Ship's physician and nurse under the control of Defendant's shoreside Medical Department;

i. Defendant represented to immigration authorities that the physician and nurse were members of the Ship's crew;

j.   The Ship's doctor and nurse ate with the Ship's crew;

k.   The Ship's physician and nurse provided services in the Ship's medical centers, and

l.   Plaintiff was required to go to the Ship's medical center to be seen for her condition; and/or

m.   At the time Plaintiff presented to the Ship's medical center, Plaintiff was seen and examined by the Ship's nurse and subsequently by the Ship's doctor.

85.   That based on the foregoing, Plaintiff believed, and was reasonable in her belief, that the Ship's nurse and/or doctor were acting as direct employees and/or apparent agents on behalf of Defendant and was never given any reason to believe otherwise.

86.   That Plaintiff relied to her detriment on her belief that the Ship's physicians and nurses were direct employees or apparent agents of Defendant in that Plaintiff did not insist on being treated by a physician without first having to pay a fee or insist on evacuation from the Vessel because she believed CARNIVAL's physician and other agents. Plaintiff would not have followed the advice of the Ship's nurse or physician if she had known that they were not actually the agents or employees of CARNIVAL.

87.   That as a result of Plaintiff's reliance upon PRINCESS's medical staff, Plaintiff's condition was not properly managed or treated, and/or immediate evacuation from the Vessel, and as a result Plaintiff's condition severely deteriorated and she sustained serious and permanent damage which would not have been sustained had she been timely and appropriately treated.

88.   That Defendant is liable to Plaintiff for any and all damages as a result of negligent medical care by the physician and/or nurse under the theory of apparent agency.

89.     As a direct and proximate result of Defendant's Ship Doctor's negligence for which CARNIVAL is liable, Plaintiff, CAROL KURIMOTO LORIAUX, suffered bodily injuries resulting in pain and suffering; physical and mental pain and anguish; disability; loss of capacity for the enjoyment of life; expense of hospitalization, surgery, and medications; loss of earnings in the past, loss and/or impairment of the ability to earn money; expenses for physical and occupational therapy, and medical expenses. Said losses are either permanent or continuing in nature and Plaintiff will suffer these losses into the future.

WHEREFORE, Plaintiff, CAROL KURIMOTO LORIAUX, demands judgment, interest and costs against Defendant, CARNIVAL, a trial by jury and any such other relief to which the Plaintiff may be justly entitled.

## **DEMAND FOR ADVISORY JURY TRIAL**

Plaintiff hereby demands trial by jury of all issues so triable of right.

Dated: January 27, 2026.

> **By:/s/ Louis M. Holzberg**
> **LOUIS M. HOLZBERG**
> **Florida Bar No.: 1011340**
> **Morgan and Morgan**
> **703 NW 62nd Ave Ste 1000**
> **Miami, FL 33126-4690**
> **Telephone: 305-929-1900**
> **Louis.Holzberg@forthepeople.com**
>
> LOUIS M. HOLZBERG (FBN: 1011340)
> louis@holzberglegal.com